BALDWIN, Circuit Judge,
dissenting.
I believe the majority opinion misapplies the “substantially justified” standard of the Equal Access to Justice Act (the Act) to the facts of this case. Therefore, I respectfully dissent.

The Standard

I do not take issue with the majority’s restatement of the broad guidelines set out in Broad Avenue Laundry for applying the “substantially justified” standard, which guidelines, in turn, track the language of the House Report on S. 265, the bill which became the Act. See H.R.Rep. No. 1418, 96th Cong., 2d Sess. 11, reprinted in [1980] U.S.Code Cong. & Ad.News 4984, 4989. However, I think further examination of the Act’s legislative history usefully illuminates what Congress intended by “substantially justified,” beyond the observation that the test is “one of reasonableness.”
Specifically, the “substantially justified” formula was adopted as a compromise between the mandatory award of fees to prevailing parties and a proposal by the Justice Department that fees be awarded only where the contested government action was “arbitrary, frivolous, unreasonable, or groundless, or [where] the United States continued to litigate after it clearly became so.” See Award of Attorneys’ Fees Against the Federal Government: Hearings on S. 265 Before the Subcomm. on Courts, Civil Liberties, and the Administration of Justice of the House Comm, on the Judiciary, 96th Cong., 2d Sess. 26 (1980) (statement of Sen. Dennis DeConcini) [hereinafter cited as 1980 Hearings ].
Those opposed to the “substantially justified” standard argued that:
It invites a retrial of the merits, putting at issue the reasonableness of the underlying claim or defense, and its factual foundation. Moreover, this inquiry would take place before a judge who had already determined that the Government’s position was not a winning one. This could result in the requirement that the Government pay fees not where its conduct was arbitrary or unreasonable, but rather where it had made an honest mistake or misjudgment regarding the facts or law in a given case.
1980 Hearings, at 42 (statement of Alice Daniel). In contrast, supporters of S. 265 expressed the concern that the “arbitrary, frivolous, unreasonable, or groundless” standard would:
allow very few awards of attorneys’s fees. It is interesting to note that this standard is already codified in 28 U.S.C. 1927, relating to liability for costs when counsel has increased costs “unreasonably and vexatiously.” An examination of the opinions interpreting this statute reveals that courts have given a very stringent interpretation to the standard. The usefulness of the standard to small business is belied by the fact there are only a small handful of opinions since the enactment of the statute in 1948 in which the court actually found the facts of the case to be vexatious enough to merit an award of costs.
1980 Hearings, at 104 (statement of James D. McKevitt).
Ultimately, the “substantially justified” language was retained in lieu of the standard championed by the Justice Department. According to a principal sponsor of S. 265:
In order to recover fees under this [latter] standard, a party must first prevail and then must marshal the facts to prove that the government action had no legal or factual basis and that it was completely without foundation. Clearly, awards under this standard would be very difficult to obtain. And where fees are so difficult to recover, the deterrent effect created by the cost of vindicating rights vis-a-vis the government would not be assured.
* * * # * *
*1375 Under S. 265, fees will be awarded “unless ... the position of the United States was substantially justified or ... special circumstances make an award unjust.” This language ... places the burden on the government to justify its actions in order to defeat an award. It is, therefore, strong enough to encourage people to vindicate their rights. It is strong enough to press the government to address the problems of abusive and harassing regulatory practices. And it is also strong enough to caution agencies to carefully evaluate their cases and not to pursue those which are weak or tenuous.
1980 Hearings, at 26 (statement of Sen. Dennis DeConcini).
From the foregoing, I conclude that the Act’s “substantially justified” standard was intended to permit, inter alia, awards of fees to prevailing parties in suits brought by the United States when the reviewing court determines that the government has persisted in pressing a tenuous factual or legal position, albeit one not wholly without foundation. Accordingly, a judicial inquiry into whether “the position of the United States was substantially justified” under the Act necessarily includes an examination of the underlying facts on which the government’s case is founded. It follows, moreover, that the existence of a colorable legal basis for the government’s case is not dispositive of the “substantially justified” question.

Application of the Standard

As the majority recognizes, the legal principle upon which the government relies in this case (that is, that the government has broad discretion to reassign its employees and to discharge them for refusing reassignment) has precedential support. However, I am unconvinced, based on the majority’s citation of facts and allegations of fact made by the government, that the government’s case did indeed have a reasonable basis in fact.
The Order of the Court of Claims dated October 24, 1980, sets out the uncontested facts which prompted the trial court to grant Gava’s motion for summary judgment and dispose of the case on the briefs:
(1) It was not until September, 1974, more than three months after the request for disciplinary action had been withdrawn without notice to Gava, that Gava inadvertently discovered that the request had, in fact, been withdrawn.
(2) The government knew that the threat of a disciplinary action in Korea formed the basis for Gava’s decision to decline reassignment.
(8) Between June, 1974, and February, 1975, the date when Gava’s separation became final, the government did not avail itself of the opportunity to resolve the situation, although the government could have stayed Gava’s transfer until the disciplinary matter was settled.
Against this backdrop, the majority mentions other factors in the case which support the decision to reverse the trial judge’s award of fees to Gava. However, none of these, individually or collectively, convince me that the government’s position was reasonable, rather than factually tenuous. Specifically, the observation that no disciplinary proceeding was actually instituted is a non sequitur; it was the threat of such action that prompted Gava’s legitimate, real, and expressed concern over having to defend an adverse action from thousands of miles away.
Similarly nonprobative is the majority’s reference to the fact that Gava asserted reasons in addition to the pending disciplinary proceeding to justify his refusing reassignment. The government was obliged to evaluate each ground for challenging the propriety of Gava’s dismissal. Absent a reasonable basis for defending on any determinative issue in the case, the government’s position cannot be deemed “substantially justified” under the Act.
Finally, the majority quotes the government’s assertion below that Gava “was well aware of his alternatives [to declining or accepting reassignment] * * * as shown by events surrounding a previous avoidance of an offer to rotate.” Even assuming an *1376 evidentiary basis for this allegation, I cannot see how the government’s position on the arbitrariness of Gava’s dismissal is thereby made more reasonable. After all, the entire dispute was bom of the government’s uncontested failure to give notice to Gava of the withdrawal of the request for disciplinary action. That Gava did not request a stay himself is basically irrelevant to whether the government’s own conduct surrounding Gava’s dismissal was arbitrary.
In summary, I do not believe the government has sustained its burden of demonstrating that its position in this case was substantially justified within the meaning of the Act.